UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MARCUS MYERS,

                                        Plaintiff,

          vs.                                                    9:05-CV-1448
                                                                 (LEK/GJD)

MS. KAREN JOHNS; MS. HARDER,

                                        Defendants.

_____

MARCUS MYERS
Plaintiff pro se
CHRISTOPHER W. HALL, Asst. Attorney General
Attorney for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 73.3(c).

In this civil right complaint plaintiff alleges that defendants discriminated against him because of his race when they required him to re-take a test that he had already passed in order to take a General Equivalency Diploma test. (Dkt. No. 1). Plaintiff also alleges that defendants intentionally kept him from advancing in his academic education program. *Id.* Plaintiff alleges due process and equal protection violations. Plaintiff seeks substantial monetary relief.

Presently before the court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 27). Plaintiff has responded in opposition to the motion. (Dkt. No. 32). For the following reasons, this court agrees with

defendants and will recommend dismissal of the complaint.

## DISCUSSION

### 1.   <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving  party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).  However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

### 2.   <u>Facts</u>

Plaintiff alleges that on April 4, 1999, while he was incarcerated in the custody of the New York State Department of Correctional Services (DOCS), he was registered for the "academic education program."  Plaintiff states that he was working toward preparing to take his GED examination. Compl. Facts ¶ 1.  Plaintiff states that

the GED examination is given twice each year to inmates who qualify for the test by passing the "TABE test." Compl. ¶ 3.  If an inmate does not pass the TABE test, he or she may not take the GED examination. *Id.*  Plaintiff refers to DOCS Directive No. 4804, governing "Academic Education Program Policies." Hall Aff. Ex. 1.

Inmates who score below a ninth grade level on the TABE test must attend school. DOCS Directive No. 4804(IV)(A)(1).  An inmate who scores at least a 9.0[1] on the reading and math portions of the TABE test is eligible to take the GED Practice Test.[2] *Id.* Directive No. 4804(III)(B)(1)(a).  In order to be eligible to take the GED Examination itself, the inmate must have scored a total of at least 230 on the practice test with a minimum of 40 on each subtest of the GED Practice Test. *Id.* Directive No. 4804(III)(B)(2)(a).  The GED testing policy specifically states that the above "screening" for admission to the GED exam is "consistent with sound educational practices and is designed to make the most efficient use of Department resources by insuring that only inmates who have a reasonable chance of success on the GED exam are admitted." *Id.* Directive No. 4804(III)(B).

Defendant Karen Johns was the Education supervisor at Great Meadow Correctional Facility during the time relevant to plaintiff's complaint. Johns Aff. ¶ 3. Defendant Brenda Harder was an academic teacher at Great Meadow Correctional Facility for part of the time covered by plaintiff's allegations. Harder Aff. ¶ 3. Plaintiff alleges that he took the TABE test and passed, and plaintiff claims that this

---

[1] The numbers on the TABE scores refer to grade levels.

[2] Defendant Johns also refers to the GED Practice Test as the Official Practice Test (OPT). Johns Aff. ¶ 20.

passing score earned him a position in "GED programming." Compl. ¶ 6.

Plaintiff states that when he passed the TABE test, defendant Johns stated that the GED classes were full, but that plaintiff would receive "call-outs" for the GED testing. Compl. ¶ 7. Plaintiff claims that he was never placed in the GED classes. Defendant Harder began working as a teacher at Great Meadow in September of 2003. Harder Aff. ¶ 6. Plaintiff states that on September 3, 2003,[3] he spoke to defendant Harder regarding the failure to place plaintiff in the GED program classes. Compl. ¶ 10. Plaintiff claims that defendant Harder told plaintiff that she would speak to defendant Johns about plaintiff's concerns. *Id.*

Plaintiff claims that after defendant Harder spoke with defendant Johns, defendant Harder told plaintiff that he would have to take the TABE test again because he had cheated on the October, 2002 examination. *Id.* Plaintiff states that defendant Harder told plaintiff that "it was impossible for you people to score so high without cheating." *Id.* When plaintiff asked defendant Harder what she meant by "you people," she pointed at plaintiff. *Id.* Plaintiff interpreted defendant Harder's gesture as a "racial statement and gesture." *Id.* Plaintiff then states that he requested to "sign out"[4] of school.

Plaintiff claims that defendants Johns and Harder told plaintiff that if he did not

---

[3] Although there is no year listed in the complaint, it is clear from the records that plaintiff was referring to 2003, since he passed the TABE test in October of 2002. Johns Aff. Ex. D. *See also* Pl. Deposition (T) at 82.

[4] During plaintiff's deposition, he explained that an inmate was allowed to "sign-out" or quit school when he achieved a ninth grade reading and math level. (T. 85). *See* DOCS Directive No. 4804(1) & 4804(IV)(A)(1)(DOCS requires participation in educational programming through the ninth grade level, and "encourages" participation beyond that level). The education level required to leave school is also measured by the TABE test.

4

re-take the test, he would face disciplinary action. Compl. ¶ 9.  Plaintiff states that

defendants Harder and Johns "altered" the test scores "in retaliation" because plaintiff

began to complain. *Id.*  Plaintiff states that no one ever discussed his cheating on the

TABE test until he mentioned filing a grievance. Compl. ¶ 7.  Plaintiff states that he

filed a grievance against defendant Harder "for [her] discriminatory attitude," abuse of

authority, and threats. Compl. ¶ 12.

Plaintiff states that on October 6, 2003, defendant Johns confronted plaintiff in

an "unprofessional manner" and interrogated  plaintiff about a grievance he filed

against defendant Harder. Compl. ¶ 13.  Plaintiff claims that defendant Johns stated

"how dare you file a grievance against a member of my staff without consulting with

[me]." *Id.*  Plaintiff claims that defendant Johns then told plaintiff that he would be

removed from GED testing call-outs. *Id.*  Plaintiff claims that as a result of the

defendants' conduct, plaintiff was "deliberately" hindered in his ability to advance

academically, and he was "stigmatized" with staff and plaintiff's peers.

Plaintiff was deposed on March 6, 2007.  The transcript of plaintiff's deposition

has been filed as Exhibit 2 to defense counsel's affidavit. Hall Aff. Ex. 2 (T).  The

record in this case also contains the affidavits of defendants Brenda Harder and Karen

Johns, together with copies of plaintiff's grievances dated September 30, 2003 against

defendant Harder and dated October 16, 2003, against defendant Johns and Mr.

Neibler.[5]  Johns Aff., Harder Aff. & Hall Aff. Exs. 3, 4.  Defendants have also

submitted plaintiff's test results for the relevant time periods. Johns Aff. Exs. B-D.

---

[5] Mr. Neibler is not a defendant in this action.

Plaintiff has four remaining claims in this action.[6]  The first cause of action simply alleges that defendants violated plaintiff's rights under 42 U.S.C. § 1981 and 1983. Compl. ¶ 17.  The second cause of action alleges that defendant Harder discriminated against plaintiff because of his race. Compl. ¶ 19.  The third cause of action alleges that defendants violated plaintiff's rights to due process and equal protection. Compl. ¶¶ 22-23.  Finally, plaintiff alleges that the defendants "retaliated" against plaintiff. Compl. ¶ 25.

### 3.   <u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants. *Scott v. Del Signore*, 2005 U.S. 6070, *12-15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)).  As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *Id.* at * 12-13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the Supreme

---

[6] The complaint contains five causes of action, however, the fifth cause of action was against DOCS, and was dismissed earlier by the court. (Dkt. No. 6).

Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.  In *Woodford*, the Court concluded that the inmates did not properly exhaust their administrative remedies when their grievances were dismissed because the inmates had missed the deadlines set forth in the grievance procedure. *Id.* at 93.  In *Jones*, the Court ultimately held that exhaustion was not *per se* inadequate simply because a defendant that was later named in the civil rights complaint was not named in the grievance. *Id.* at 923.  Compliance with prison grievance procedures is all that is required by the PLRA for "proper" exhaustion. *Id.* at 923.

New York State provides inmates with a grievance procedure to follow by which inmates may file complaints and appeal adverse decisions. N.Y. CORRECT. LAW § 139; N.Y. COMP. CODES R. & REGS. tit. 7 §§ 701.1 *et seq.* (NYCRR).  The regular Inmate Grievance Program (IGP) consists of a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). *Id.* §§ 701.5(a) (1) and (b).  An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d).  Time deadlines apply at all levels of the process, but exceptions to any of the deadlines may be made based on "mitigating circumstances."

*Id.* §§ 701.5(a)(1); 701.6(g).  An inmate must appeal any denial of his grievance to the highest available administrative level. *Martinez v. Williams*, 349 F. Supp. 2d 677, 682 (S.D.N.Y. 2004).

There is also a special section of the regulations that provides for grievances claiming unlawful discrimination against facility employees. 7 NYCRR § 701.9. Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. *Id.* § 701.9(a).  The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging unlawful discriminatory acts are given a grievance number, and sent immediately to the Superintendent for review, with a copy to the Office of Diversity Management. *Id.* § 701.9(b), (c).  The Superintendent must initiate an investigation by higher ranking supervisory personnel or request an investigation by the Office of Diversity Management. *Id.* § 701.9(d). The Superintendent is required to respond within twenty five (25) calendar days, and adverse decisions, including the failure of the Superintendent to respond in a timely manner, may be appealed to the CORC. *Id.* § 701.9(e), (f).

In this case, plaintiff filed two grievances.  The first grievance was against defendant Harder and was dated September 30, 2003. Hall Aff. Ex. 3 (Grievance # GM-35029-03).  In that grievance, plaintiff complained that although he passed the TABE test in October 2002, he was forced to take the test again and was told by defendant Harder that if he did not re-take the test, he would be subjected to disciplinary actions. *Id.*  The second grievance filed by plaintiff was dated October 16, 2003. Hall Aff. Ex. 4. (Grievance # GM-35038-03).  In the October 16, 2003 grievance, plaintiff complained that on October 3, 2003, defendant Johns and Mr.

Neibler circumvented the grievance procedure by "interrogating" plaintiff about the September 30, 2003 grievance. *Id.* In the October 16, 2003 grievance, plaintiff also complained that defendant Johns accused plaintiff of cheating on the TABE test and told plaintiff that he would be re-tested every twelve months. *Id.* Plaintiff claimed that defendant Johns told him that if his scores went down, he would "be demoted." *Id.* at 2.

At the end of the October 16, 2003 grievance, plaintiff asked to be placed in the "GED assignment" and asked that Mr. Neibler and defendant Johns be reprimanded for their "discriminatory practices." *Id.* Plaintiff appealed this grievance to the CORC. Hall Aff. Ex. 5. It does not appear that plaintiff appealed any adverse decision on the September 30, 2003 grievance . Defendants have submitted the affidavit of Karen Bellamy. Director of the IGP, who states that there is no record of any appeal to the CORC of Grievance # GM-35029-03. Bellamy Aff. ¶ 8. Defendants argue that because plaintiff did not complete the administrative appeal process with respect to the September 30, 2003 grievance against defendant Harder, the complaint should be dismissed against her for failure to exhaust.

It appears that plaintiff exhausted his administrative remedies with respect to defendant Johns. In the October 16, 2003 grievance, plaintiff included all the factual bases that he alleges in this case. He claimed that defendant Johns improperly questioned plaintiff about the September 30, 2003 grievance, accused him of cheating, told him he would have to be re-tested, and plaintiff called her actions discriminatory. Hall Aff. Ex. 4. The court notes that there is a notation on the October 16, 2003 grievance, indicating that plaintiff ***attached*** a copy of the September 30, 2003

grievance (GM-35029-03).  Based on the fact that plaintiff attached a copy of the grievance against defendant Harder to the grievance against defendant Johns and upon the Supreme Court's direction in *Jones*, stating that a plaintiff need not name every individual involved in the incident in order to exhaust, this court finds that plaintiff has sufficiently exhausted his administrative remedies to comply with the PLRA requirement with respect to both defendants.

Defendants also claim that because plaintiff did not mention the word "retaliation," in the October 16, 2003 grievance against defendant Johns, any claim for retaliation may be dismissed for failure to exhaust.  The grievance procedure states that a grievance must contain:

> [i]n addition to the grievant's name, department identification number housing unit, program assignment, etc., the grievance should contain a concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint, i.e., specific persons/areas contacted and responses received.

N.Y. Civ. Prac. L. & R., tit.7, § 701.5(a)(2).  In *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004), the Second Circuit held that if the prison regulations do not prescribe a particular content for inmate grievances, the grievance will be sufficient if

> it alerts the prison to the nature of the wrong for which redress is sought.  As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming.

*Id.* (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002))(internal quotation marks omitted).

Plaintiff's October 16, 2003 grievance did alert the prison officials to the

asserted shortcoming of which plaintiff was complaining.  The fact that he did not mention the word retaliation does not seem to this court a failing that would require dismissal for failure to exhaust.  Plaintiff basically states that defendant Johns and Mr. Neibler were treating him improperly based upon a grievance that he filed in September, 2003. Hall Aff. Ex. 4.  Plaintiff attached the September grievance to the October grievance.  Given the liberality with which the court must treat *pro se* pleadings, plaintiff's grievance might "suggest" that defendant Johns was acting inappropriately in retaliation for plaintiff's September grievance. *See e.g. Varela v. Demmon*, 491 F. Supp. 2d 442, 448 (S.D.N.Y. 2007)(although plaintiff did not use the word "retaliation" in his grievance, court found that language of grievance could "suggest" that claim).  It is true that the grievance in *Varela* was more "suggestive" of retaliation, than plaintiff's grievance in this case, but reading plaintiff's papers liberally, this court finds that plaintiff has exhausted his administrative remedies for the entire complaint.

    In any event, even if the court were to recommend dismissal of one claim for failure to exhaust, the rest of plaintiff's claims would proceed because "total exhaustion" is not required. *Jones v. Bock*, 127 S. Ct. 910, 923-26.  Finally, the court need not specifically decide whether the retaliation claim has been exhausted because all plaintiff's claims fail on the merits as discussed below.

**4.    Educational Programs**

**A.  Due Process**

The law is well-settled that there is no property or liberty interest in a particular

educational program in prison. *Toney v. Goord*, 2006 U.S. Dist. LEXIS 60987, *3-7 (S.D.N.Y. Aug. 28, 2006).  The plaintiff in *Toney* argued that inmates were entitled to a particularized educational program, tailored to meet their own individual needs. *Id.* at *4.  In analyzing plaintiff's claim, the *Toney* court cited various other cases in which courts in the Second Circuit, including the Second Circuit itself, have decided that N.Y. CORRECT. LAW § 136 does not confer a property *or* liberty interest in an educational or any other type of program. *Id.* at *5 (citing *inter alia Handberry v. Thompson*, 446 F.3d 335 (2d Cir. 2006); *Wright v. Coughlin*, 31 F. Supp. 2d 301, 311 (W.D.N.Y. 1998); *Giano v. Cuomo*, 94-CV-809, 1998 U.S. Dist. LEXIS 17215, *10 (N.D.N.Y. Oct. 28, 1998); *Lane v. Reid*, 575 F. Supp. 37, 39 (S.D.N.Y. 1983)).

In this case, plaintiff argues that he should have had a hearing prior to being "terminated" from the program because of alleged "cheating" on the October 2002 TABE test.  Plaintiff was not found "guilty" without a hearing.  He was never ***charged*** with cheating, nor was he issued a misbehavior report. *See* DOCS Directive No. 4804(III)(A)(5)(inmates caught cheating "during" testing will be removed from the test ***and*** issued a misbehavior report).  In her affidavit, defendant Johns states that "there were allegations that Mr. Myers cheated on the test." Johns Aff. ¶ 6.  These allegations were made to her a few days after the test was administered, "possibly by a corrections officer." *Id.*

The court would also point out that plaintiff was not "removed" from the educational program, he was required to re-take the TABE test.  Even if this court were to analyze this case in terms of a disciplinary violation, the court would find no

12

liberty interest in plaintiff's "right" to take the GED exam or participate in any particular school class.  Only for purposes of this analysis, the court will assume that plaintiff is correct, and that the re-test requirement and the alleged "removal" from the GED program were sanctions for cheating on the October 2002 TABE test.

In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  In *Sandin*, the court rejected a claim that thirty days in segregated confinement was "atypical and significant." *Id.* at 486.

In this case, the fact that plaintiff was required to re-take the TABE test or even assuming that his "sanction" was removal from the program or an inability to attend a particular class, there can be ***no serious claim*** that these alleged  "sanctions" would pose an "atypical and significant hardship" on plaintiff in relation to the ordinary incidents of prison life.  Thus, there would be no "liberty" interest protected by due process, and plaintiff's due process rights were not violated when he was made to re-take the TABE test, even assuming that he was kept in a particular class longer than he believed was necessary.

As stated by defendant Johns, plaintiff was not "officially reprimanded" for the cheating incident. Johns Aff. ¶ 8.  Defendant Johns stated that normally, if an inmate

is found to have cheated on an examination, the scores are automatically invalidated, and most likely, the test is not even graded. *Id.* ¶ 14.  However, because the alleged cheating in plaintiff's case was not brought to defendant John's attention until after the exams had been sent out for scoring,[7] she allowed the passing scores to be entered into the computer and allowed plaintiff to take the practice GED exam, despite the allegation that he cheated on the TABE test. *Id.*  In addition, the court would point out that plaintiff was allowed to take the practice GED examination in October of 2002, and apparently again in May of 2003, but did ***not*** achieve the minimum score to advance to the formal GED examination.  It was not until after plaintiff ***failed*** the practice GED twice, that defendants told him that he had to re-take the TABE test. Defendants did not "hold" plaintiff back.  A review of the test scores show that when plaintiff re-took the TABE test in September of 2003, he scored more consistently with his pre-October 2002 scores, a seventh grade level in reading and a ninth grade level in math. Johns Aff. Ex. D.

In fact, plaintiff conceded at his deposition that he took the TABE test three or four more times before his scores qualified him to take the practice GED examination. (T. 88).  He passed the test in ***2007***. *Id.*  Plaintiff testified that he failed the TABE test once even after leaving Great Meadow Correctional Facility. (T. 89).  Thus, it does not appear that his low TABE test scores were in any way related to these two defendants.

---

[7] The tests are not scored at the facility. Johns Aff. ¶ 46.  The tests are sent out to an off-site facility and scored electronically. *Id.*

### B.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)(citation omitted).  Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2152 (2008).  However, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination and instead claims that he has been irrationally singled out as a "class of one."[8] *Id*. (internal quotations omitted).

To establish an equal protection violation, the plaintiff must show that the defendants applied a different standard to similarly situated individuals. *Wiggins v. N.Y. City Dep't of Corr.*, 06 Civ. 1946, 2008 U.S. Dist. LEXIS 61262, *21 (S.D.N.Y. Aug. 12, 2008)(citing *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006)).  Plaintiff must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  Then, plaintiff must show that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*  In a "class-of-one" claim, the Equal Protection clause requires a "rational basis for the difference in treatment." *Id.* (citing *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

In this case, plaintiff alleges that he was treated differently because of his race.

---

[8]  The court in *Engquist* narrowed the "class-of-one" claims by holding that a public employee does not state a claim under the Equal Protection Clause by asserting a class-of-one theory in connection with his employment. 128 S. Ct. at 2156-57.

15

Plaintiff first claims that defendant Harder told him that "you people" could not score so highly on the TABE test without cheating. Compl. ¶ 10.  Plaintiff states that he asked defendant Harder what she meant by "you people," and defendant Harder allegedly pointed to plaintiff. *Id.*  Plaintiff interpreted that alleged statement, together with that alleged gesture as referring to the fact that plaintiff is African-American.  At his deposition, plaintiff claims that this incident is the only incident with defendant Harder, leading plaintiff to assume that defendants were discriminating against him because of his race.

There is absolutely no evidence of any racial discrimination in this case.  It is clear that plaintiff was made to re-take the TABE test because there was a suspicion that he cheated on the October 2002 TABE test, which was supported by his failing the October 2002 practice GED examination.  The defendants' position is further supported by the fact that it took plaintiff at least three more tries at the TABE test to reach the required ninth grade level on both English and Mathematics subtests. Plaintiff points to no other individual of any race that was treated differently that he was.

With respect to any class-of-one claim, the defendants' actions in making plaintiff re-take the TABE test were certainly ***rationally*** based upon plaintiff's poor academic performance.  Plaintiff continues to insist that he was forced to re-take the TABE test because of a false allegation that he cheated on the test, however, the alleged cheating was only ***one*** factor upon which the decision was based.  Plaintiff neglects to mention that notwithstanding his alleged cheating on the TABE test, he

16

was allowed to take the practice GED, but failed the test. *See* Johns Aff. ¶ 20 (stating that plaintiff was not eligible to take the "official practice test" (OPT) after cheating on the October 2002 TABE test *and* failing the subsequent OPT exam). Thus, plaintiff cannot sustain an equal protection claim under any possible theory.

## 5.   Retaliation

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)). The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).[9]

The court in *Dawes* stated that in order to survive *summary dismissal*, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the

---

[9] The court would note that *Dawes* did not create a "heightened pleading standard", and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002). The decision in *Phelps* resulted from a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), and the court was considering only the face of the complaint. This case comes before the court upon a motion for summary judgment, thus, this case is distinguishable from a situation in which only the complaint is being examined.

adverse action.

239 F.3d at 492 (citations omitted).  In a prison context, all that is required is that the adverse conduct by defendant would have deterred a similarly situated individual of ordinary firmness from exercising his First Amendment rights. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).  In *Gill*, the court held that this objective test applied, even where a particular plaintiff was ***not subjectively deterred*** and continued to file grievances and lawsuits. *Id.*

Finally, even if plaintiff can show that his protected conduct was a motivating factor in the defendant's adverse action, defendants may evade liability by showing that they would have taken the same action even in the absence of the protected conduct. *Bennett*, 343 F.3d at 137 (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

In this case, plaintiff claims that the defendants retaliated against him because he told defendant Harder that he was going to file a grievance about having to take the TABE test again.  There is no dispute that filing grievances is a constitutionally protected activity.  *Franco v. Kelly*, 854 F.2d 584, 588-89 (2d Cir. 1988).  Plaintiff also claims that after he filed the grievance, defendant Johns approached plaintiff and improperly "interrogated" plaintiff about that grievance.  Plaintiff did not mention any grievance to any defendant until September of 2003.

The court would first point out, however, that when plaintiff filed his first

18

grievance, it was sent to defendant Johns for a response.  The letter from the Inmate

Grievance Supervisor reads in part:

> If your area can remedy the problem, either by addressing the grievance or by
> speaking directly with the inmate, we would appreciate you [sic] cooperation
> and assistance.  If the inmate is satisfied with your resolution, please note in the
> area marked "grievance has been informally resolved as follows," what action
> was taken and have the inmate affix his signature and date.

Johns Aff. Ex. G.  The communication also states that if an informal resolution were

not reached by defendant Johns, then the IGRC would conduct a hearing. *Id.*  A

response from defendant Johns regarding any informal resolution was requested

within five working days. *Id.*  Based on this communication, defendant Johns was

certainly acting appropriately if she did discuss the grievance with plaintiff.  She was

encouraged to do so by the Inmate Grievance Supervisor in an attempt to informally

resolve the grievance.

     Defendant Johns also submitted a written response to plaintiff's grievance,

dated October 6, 2003, the day that plaintiff alleges that defendant Johns

"interrogated" him inappropriately. Johns Aff. Ex. H.  In that written response,

defendant Johns explained why the "current" score was accurate.  She stated that "[i]t

is the norm for an individual to gain 6 months to 10 months growth in a school year,

but not 7 grade levels in math and 4 grade levels in reading that would be highly

unlikely." *Id.*  Defendant Johns also stated that in order for plaintiff to leave school, he

would have to attain a ninth grade level in reading and math.

     The basis for determining that the October 2002 test scores were not "accurate"

19

was in no way related to plaintiff's race, and not in retaliation for plaintiff's

complaints.  As stated by defendant Johns, it was highly unlikely that any individual

(regardless of his race) would have improved to that degree in a school year.

Plaintiff's performance on the practice GED and the subsequent TABE test (taken in

September of 2003) confirmed defendant Johns's statement.

Plaintiff also claims that defendants retaliated against him by denying him call-

outs, and that plaintiff was held back from further testing.  Plaintiff's claims of

retaliation are completely conclusory.  First, defendant Harder did not even begin

working at Great Meadow until September of 2003, at which time plaintiff re-took the

TABE test, and as stated above, plaintiff was able to take the practice GED

examination in October of 2002.  At the deposition, plaintiff testified that he also took

the practice GED examination in *May of 2003.*, but failed that examination as well.

(T. 62-63).  Thus, it is clear that neither defendant prevented plaintiff from getting

call-outs for testing. *See e.g.* Johns Aff. Ex. D (call-out slip for "Pre-GED *Mandatory*

*Testing*", dated October 1, 2002).  Plaintiff's claims of retaliation are completely

conclusory and may be dismissed.

## 6.   Section 1981 Claim

Plaintiff also alleges that defendants have violated plaintiff's rights under 42

U.S.C. § 1981.  Any claim for racial discrimination brought under section 1981 must

identify an "impaired 'contractual relationship' . . . under which the plaintiff has

rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)(quoting 42

U.S.C. § 1981(b)).  In this case, in addition to failing to support any claim of racial

discrimination, plaintiff has failed to identify an impaired contractual relationship under which he has rights.  Thus, any claim under section 1981 may be dismissed.

      **WHEREFORE**, based on the findings above, it is

      **RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 27) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY**.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 18, 2008

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge